Morales, number 23-10315. Good morning. My name is Steve Binhack. I represent Worth Group and Andrew Wilshire. We are asking that you reverse the District Court's decision and hold that the Court had personal jurisdiction over Ms. Morales and that you return the case below for proceedings. Ms. Morales signed a contract with Worth Group, and the contract included an arbitration clause, which also covered Mr. Wilshire. Critically, the arbitration clause required her to submit or file her claim with the Jams Arbitration Service in Palm Beach County, Florida. In a separate, independent venue clause, the contract also required her to participate in arbitration proceedings in Palm Beach County, Florida. Ms. Morales filed an arbitration against other parties with Jams in California, and she subsequently brought in the Worth Group and Mr. Wilshire. In this way, Ms. Morales breached a contract in Florida in two ways. First, as we alleged in paragraph 19 of the complaint, she refused to file an arbitration claim in Florida. Second, as we alleged in paragraphs 4 and 80 of our petition, she is refusing to conduct an arbitration proceeding in Florida. By failing to file in Florida, Ms. Morales breached a contract in Florida, and Florida's long-arm statute kicks in. Florida Statute 48.193.1A7 subjects a non-resident to specific personal jurisdiction in Florida when that non-resident breaches a contract in this state by failing to perform acts required by the contract to be performed. Mr. Benhack, if all I looked at was the text of the statute, I think your argument would be pretty persuasive, speaking for myself. The problem I have is, as I read Florida case law, although I don't think it's squarely true, it's a whole zion point, suggests a different reading. Help me with those Florida cases and how do we deal with them? McCrae and the others? I understand your question, Judge Marcus, and I'm happy. Let's start with McCrae, because I think that's the most important starting point. That's the Florida Supreme Court case. Now, the Florida Supreme Court case McCrae, I do not think applies, and I think you get three places in the opinion where it's clear why we are correct. First, we start with the question, that said, can a Florida court exercise in personam jurisdiction over the objection of a non-resident, importantly, who has done none of the acts specified in the Florida alarm arm statute? In that case, the Florida Supreme Court answered the question and said, in this case before us, it unequivocally appears that there's no independent basis for Florida to exercise jurisdiction over the defendant in this dispute, and the holding is critical. We hold . . . But you left out part of the certified question, which was that the contract in question had a provision, a forum, non-convenience provision that required Florida to be the forum, correct? Yes, ma'am, but the point of . . . If I could read the holding, and then I think I can answer your question very specifically. The holding says, in the case before us, it unequivocally appears there . . . I'm sorry, we hold that a forum selection clause designated Florida as the forum cannot operate as the sole basis for Florida to exercise personal jurisdiction over an objecting non-Florida resident. Judge Marcus, the point is that McCrae does not under the Florida Law Enforcement Act. See, I agree with you that it doesn't precisely answer the question, but it is suggestive of how they look at this matter, isn't it? I think it is suggestive, but I think it's suggestive in a way that favors my client. Isn't it implicit that they, in essence, by ruling the way they did, decided that that individual, in fact, had not breached the contract? No. Well, in that case, yes. It's implicit. In that case, yes, but in our case, it's different because McCrae doesn't read number seven out. In our case, we have an independent obligation in the Worth contract that says you have to submit or file, and we've shown in our brief that submit means file, and under the Posner case . . . All right, but now you have the legislature, which has amended the statute, correct? Yes, ma'am. All right, and now the statute, and that was in response, really, to the McCrae decision, so now the statute reads that you can't, if you have a provision that requires you to . . . let me read exactly what it says. If it requires you to be in court, to do something in court in the jurisdiction of Florida, but it uses language courts of the state, and you concede that arbitration is not a court. Yes, but the point of McCrae and the amendment that comes after it, remember, before McCrae, there was no way under the Florida long-arm statute for parties to agree to personal jurisdiction in a venue clause. Correct. The point here is that they added that, and the best way, I think, to conceptually understand this point is you can have a contract that has no venue clause at all, and you can have and still be subject to long-arm jurisdiction. But you still have the problem of the implicit holding in McCrae, which is that, in essence, they found that it was not a violation, or it was not a breach of contract, not to bring it in the . . . I understand the venue clause. The venue clause. This is a separate . . . in our contract, we have an obligation to file, and then a separate venue clause in a separate portion of the contract, and the venue clause has nothing to do and says nothing about where to file. And under the case law in Florida and this circuit, the court must read the entire contract and cannot read pieces out of the contract. You have to give effect to all of the portions of the contract. In this case, the parties, from our perspective, the parties explicitly made it clear that they wanted both things to happen, and to be separate and independent issues. Otherwise, they wouldn't have put them in two separate places. By collapsing those two, I think you . . . not you personally, of course, but I think the court would misread the contract . . . I understand that, but the long-arm statute, the problem with the long-arm statute is that when you read McCrae and then you read the amendment by the Florida legislature, you still have to have some minimum contacts with the state of Florida. Yes, ma'am. Here, the only contact that you have with the state of Florida is . . . I'm just going to say, whether it's a venue provision or a forum provision. And under McCrae, they made it implicit that that in and of itself was not going to be sufficient because they say specifically in McCrae, they have the holding which is to bring it within the jurisdiction of the long-arm statute, which means that they went through the analysis because obviously, whether or not you had a contract or you breached a contract, that was part of one of the enumerated factors that would fall into whether or not there was personal jurisdiction. I understand your point, Judge Lagoa, but let me respond this way. If a contract was written prior to McCrae and prior to the amendment of the law in Florida . . . No, I understand that, that there was no provision. I understand that. I get the law in Florida. I know you do. I know you do. But what I'm saying is the only way to get jurisdiction, personal jurisdiction at that point, would have been to say, we want you to file in Florida, which is different than the venue, and the other cases show that. What Johns says . . . let me just make sure I give you the right case with the right facts. What Johns said is if the party successfully breaches this arbitration provision, jurisdiction in any subsequent suit will be limited to Florida law, and Florida law will apply with the prevailing party to recover its costs and fees. That was a non-lawyer's attempt at a venue clause, but it is a venue clause that would not be violated, and a portion of the contract that would not be violated by an arbitration anywhere in the world. It would not violate those specific terms. How do you characterize the provisions in this case? What are they? There are two separate provisions, Judge Jordan. There is first and foremost, from our perspective, an independent obligation under the contract to file in Florida. That's a forum selection clause. No, it's not. I don't mean to be disrespectful, but it's very critical why not, because under this contract as well, the parties agreed that they would have a former federal or state court judge from Florida to be arbitrators, and when you file with JAMS outside of Florida, the panel will not have those people. So here, the parties say, we want to make sure you get a Florida panel, and so we get Florida judges who are qualified. That's no different, I think. That's no different than some forum selection clauses, which not only tell you the place where you have to file, but tell you the venue where you have to file in terms of the entity. You must file in Dade County Circuit Court. You must file in Federal District Court. You must file in the Middle District of Florida. You must file in the Northern District of Florida. Specifying JAMS and the arbitrators as retired state or federal judges just seems to me to be a more specific forum selection clause. I'm not sure it's determinative. I just wanted to know what your characterization of the clause was. First of all, I think you're all on the point of this case, the exact point of this case. My response is simply this. McCrae says that if you want to get in to, if you want to have personal jurisdiction over a non-resident in Florida, it is not enough to have an insufficient forum venue clause. It's not enough in and of itself. But it also says that if there's any other independent basis, you have personal jurisdiction. What we're saying here is there's another part of this contract that is very specific. We've alleged it. It's in another part of the contract that deals not with venue, and it makes an obligation to file in Florida. From my perspective, Judge Jordan, I think this is, and Judge Marcus, to your specific question, this is no different than the case, the Globo-Rutan, which was in front of Judge Middlebrooks, where the shareholders agreement had nothing to do with Florida as a company from Brazil. Everything was going on outside of Florida except for one thing. They had to close in Florida. And they didn't close in Florida. Judge Middlebrooks said, you didn't close in Florida. That's an independent breach under 7, and therefore you have jurisdiction. Let me ask you this question. Even assuming, arguendo, for the purpose of my question, that you're right and you fall within that provision of Florida's long-arm statute, you have another hurdle that you have to overcome. You've got to overcome the due process clause. Tell me what minimum context you had with Florida that would be sufficient to allow the court to assert jurisdiction. First, one second before I do that, that was not raised below. I think that argument is waived. But we do have to satisfy it, and we can. Because if you look at the contract itself, the parties agreed that negotiation was done in Florida, that the payments were made in Florida, that the interest was charged in Florida for the loan, which is the underlying piece of this contract. How was negotiation made in Florida? Well, Wirth was here. They provided the contract. And Ms. Morales was in California. I mean, that's not the law. It's fair to say that the party that drafted the agreements and did certain things in Florida, but if you're dealing by phone or by email or by text or by Zoom or whatever, I'm not sure you can say that the negotiations took place here. They might have had a focus here. Well, I accept your point, Judge Jordan. May I say two things on that? First, Ms. Morales knew that ultimately she would arbitrate in Florida. She knew she was taking a loan from a Florida company. She knew she would . . . But what case do you have for that proposition that you would meet minimum contacts? Well, there are a number of cases, Judge Lagoa, that say that if you agree to arbitrate in Florida, and then . . . And you have no other contacts. She has no bank account. She doesn't have a residence here. I mean, if you go through the list of all the different things, she doesn't meet any of those qualifications. She had an account with Worth. She had a loan account, and she had money, a loan with Worth, and that was in Florida, and it was serviced from Florida, and her loan was in Florida, and her interest was paid in Florida. But also the cases, as I was going to say, the cases say that if you have an arbitration clause and the award has to be challenged, that can automatically be challenged in Florida, the award, even against a non-resident, because the agreement to do an arbitration in Florida allows a challenge to the award in Florida. So my view is that . . . And I know I'm over time, so I . . . You're answering our questions. Keep going. Okay. Sorry. So in my view, the fact that she agreed to an account, a loan account, which would continue with Worth in Florida, she had interest in Florida, with a separate and independent company, she had holdings of silver and gold, or just precious metals in Florida. She was . . . That had nothing to do with this case, did it? It does in the sense that the Worth account was a loan against those metals, and so there's this loan account . . . Her gold was held in a vault in Florida? No, sir. It was held in a Brinks depository outside of New York City's JFK Airport. Guess what really I'm getting at with the thrust of the question. I think my colleague was as well. It struck me, and I want you to tell me if I've misunderstood this, that the contractual agreement between Morales and the Worth Group is really all she wrote. It looks to me there's nothing more. None of the events that really gave rise to the filing in California appear to have taken place in Florida. I don't think it's easy to say the negotiations took place in Florida. She signs the contract in California, and it struck me that there wasn't a continuing, repeated relationship of any kind. I may have misapprehended any one or all of those factors. Tell me what I may have gotten wrong and what I just laid out for you. Yes, sir. The single most important fact is she had a continuing relationship with Worth where she had a loan. There were interest payments that needed to be made on the loan. The account stayed in Florida with Worth, which is a Florida company in Palm Beach. That relationship was serviced, and she had to deal with it in Florida. Her loan, her interest, and her continuing obligation was to Worth. Worth also had the opportunity, if necessary, to foreclose on her precious metals. That foreclosure, although the metal would have been physically located in New York, would have been instigated from Worth's offices in Florida. I think it's very important, Judge, that the parties agreed in the contract, and you'll see in the arbitration provision, that a whole series of things occurred in Florida. I take your point, Judge Jordan, that it's hard to say that the negotiations were made. From your perspective, I guess I can't even concede that point, but still, the parties agreed that that and a whole number of other things occurred here. I think parties can agree to those things. I think this is a contract, a significant and serious contract, to buy precious metals on leverage. This woman signed it and agreed to those things. Principally, Judge Marcus, the continuing relationship with Worth over the loan and the interest, which was going on in Florida, if she had to deal with Worth, she would have had to pick up the phone and call Florida. If she were right Florida, she would never have come here. Of course not. She would have had to reach out into Florida to deal with her account, which was a Florida. Thanks very much. Thank you very much. We've taken you over your time, but you've saved everything for rebuttal. Thank you, Judge. I appreciate your time. Mr. Cohn. Members of the panel, may it please the Court. Good morning. My name is Aaron Cohn. I represent Rosalind Morales, the FLE. You have a clear understanding of the case law. I don't know what I can add in that respect. Ms. Morales is a woman of limited means in Southern California. She was working with a broker out there. She didn't even know she signed this contract with Worth Group. That's not a matter for us, right? That's not a matter for us. The district court took it as a given that she executed the agreement that we're all discussing. For purposes of where we were in the proceeding, yes. Can you answer the question that Judge Marcus posed to your colleague, which is what minimum contacts does your client have in Florida, if any? Thank you, Judge. I don't know, other than what Mr. Binhack discussed with respect to this contract that, at least in the record, she didn't know she signed, but we're assuming that she did and entered into it. She doesn't have any contacts in Florida at all. You did not raise, at least on appeal, you did not raise as an alternative ground for affirming the judgment, the constitutional minimum contacts argument, right? We did not. Okay. Why isn't that waived then? Even if you have a good argument, this isn't subject matter jurisdiction, and you can certainly waive personal jurisdiction. Why should we consider the constitutional due process minimum contacts issue, which is a serious and substantial one, just speaking for myself, but it looks to me like Mr. Binhack's right that you didn't raise it. We did not raise it, and I'm not disputing that it's waived or not. So then this case turns on the meaning of Florida's long-arm statute, right? I believe so. Okay. Yes. And is it your argument that, under McRae, the Florida Supreme Court implicitly held that you can't . . . a forum selection clause designate . . . well, this is the actual holding. A forum selection clause designating Florida as a forum cannot operate as the sole basis for Florida to exercise personal jurisdiction over an objecting non-resident defendant. Yes, Your Honor. That's the holding of the . . . But implicit in the holding is that there were no other bases for asserting personal jurisdiction over this particular individual. That's precisely right. And this case dealt with a breach of contract based on the forum selection clause. That's right, Judge. Okay. Thank you. And that's discussed in the Ph.D. at Western District Court decision in a way that's succinct and I think makes the point that court said Florida constitutes a breach of contract in Florida bringing respondent within the provision of Florida Statute 48.193.1A.7. If respondent was correct in this regard, then the result in McRae would have been different. There, too, the objecting non-resident defendant had failed to comply with the contractual provision designating Florida as the appropriate forum to resolve any dispute between the parties. Yet the Florida Supreme Court, interpreting Florida's long-arm statute, held that a contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting in-person jurisdiction over an objecting non-resident defendant. And further . . . What else would you need? Let's assume that's McRae, top to bottom. What else do you need? I mean, isn't this a . . . Okay, let's start out with little building blocks. As alleged by Worth, did Ms. Morales breach the contract? Well, they allege a breach of contract. Right. It's a breach of contract, a breach of the venue provision and the Florida Supreme Court . . . No, no, I'm not talking about McRae right now. I'm going to get back to McRae because I think that's a strong point for your side. But based on Worth's allegations, Worth and Mr. Wolshire, did Ms. Morales breach by not filing her arbitration claim here in Florida? That's their allegation. Well, it's an allegation we take as true for purposes of deciding whether the Florida long-arm statute applies or not, right? Well, I think that . . . I can't take it as true in light of McRae. No, no, no. I don't think McRae says there was no breach. What McRae suggests is that that sort of a breach may not be enough. But it doesn't say no breach. It just says you can't get somebody here under the long-arm statute. But here, what I'm asking you is the precursor question. This is a motion to dismiss, right? Yes. You did not challenge, as I take it, the factual allegations concerning the breach in your motion to dismiss, right? No, Judge. No, Your Honor. Right, so we take it as a given that Ms. Morales breached her obligations, her duties, whatever you want to call them, to institute the arbitration claim in Florida. Is that right? I'm not sure I can concede that because I think you could read McRae one of two ways. One, you could read it as you're suggesting, which is that a breach of a remedial provision in a contract is not enough under the long-arm statute. Or alternatively, I think you could read McRae to say that when you don't comply with a venue provision, it's not a breach at all. I'm not sure that it's clear. That would be a merits decision, right? That would not have been a Florida long-arm jurisdictional decision. It would have been a merits decision. A plaintiff's allegation that a defendant breached an agreement by not filing in the forum designated by the agreement doesn't constitute a valid breach of contract claim. That's not what McRae . . . I don't read McRae that way. Let me just put it that way. My point is that if you're looking just at the text of the statute to go back to where Judge Marcus started at the beginning of the discussion with Mr. Binhack, if you look at the text of the long-arm statute, the allegations seem to fit, don't they? If you put McRae to the side, the text of the statute seems to fit. I wouldn't disagree with that. May I . . . I read McRae a little differently. That's why I'm saying it's sort of implicit in the holding because the court said specifically, in the case before us, it unequivocally appears that there is no independent basis for Florida to exercise jurisdiction over the defendant in this dispute. At the time that McRae came out, one of the factors to be considered for interim jurisdiction was whether or not you breached a contract. Correct? Correct. If McRae is read to say that breach of a venue slash forum selection provision is not enough in and of itself, what else would you need? I'm not sure we need anything else. The Florida legislature then amended the long-arm statute to allow for parties to contract for jurisdiction in the state using a venue provision. Right, but I'm not talking about the separate later provision because Worth and Mr. Wolshire haven't tried to proceed under that ground. You think McRae, at least for now, has completely shut off any argument that a breach of a venue slash forum selection provision subjects the person to long-arm jurisdiction under subsection A7? Yes, Your Honor. Okay. Let me ask you just a slightly different question. The magistrate judge, when he addressed the matter, looked not just at the but alternatively ruled on transfer to the Southern District of California. When it came to the district court, Judge Cannon only went off on the first grounds, not the second grounds. If indeed the district court was right on the first issue, would we even be able to address the second? Would that be reviewable before us? I don't think it's . . . thank you, Your Honor. I don't think it's reviewable because I don't think you can appeal a transfer order. Whether a court can transfer without determining jurisdiction, I don't know the answer to that. Isn't the other possible problem that because Judge Cannon didn't pass on the recommendation, which is usually not directly appealable here? I agree. That would be a problem with presenting the transfer issue. It's another way of saying the case is not properly before this court. Judge Cannon ruled on one ground and one ground alone. Notwithstanding anything the magistrate judge may have said about two grounds, I don't see how we could entertain that. Thank you. We're not asking this court . . . No, I understand. I would take it your position would be just that. That's your Honor. Right? I mean, you would not have us address that alternatively. I don't think it's set up for this court to address the transfer issue.  Thank you very much. Thank you very much. I'd like to address a point that I think rightfully appears to be on your minds. I think it's this issue of whether McCrae can really clear the field. I think Ph.D., in that case, Western Ph.D. or Ph.D. Western, is a good example. In Ph.D. Western, the court cites McCrae and says, okay, we get it. The sole reason, the venue clause cannot be the sole reason. Then it looks at the particular language in Ph.D. and it says, that's not enough. But that's not enough from our perspective to wipe out the rest of the Florida long-arm statute pieces. I understand, Judge Lagoa, that you say that there's an implicit suggestion in McCrae. I understand that. I happen to disagree, but I understand the point. But the point from our perspective is an implicit, let me say dicta at best, is not sufficient to wipe out a specific provision that the Florida legislature decided to implement and cause as a reason to create long-arm jurisdiction. That's important because I don't think you can use McCrae to read. But I guess the issue I'm having, I mean, if I just was reading the statute without McCrae, then I think you have a much stronger argument. The problem I'm having is that then when the legislature amends the jurisdictional statutes and adds, in essence, in order to address McCrae and changes it so that then if you have a forum selection clause, let's say, if you have anything, a forum selection clause that is before any of the courts of the state of Florida, that's going to be sufficient. Judge, I think it's also important . . . But this is not a court in Florida. Arbitration is not a court. The district court is a court in Florida, and we've asked for relief in the district court, which is . . . But that provision only applies whether the forum selection clause deals with whether you're requesting relief in any of the courts of Florida, and your provision clearly doesn't fall within that. Understood, but I'm not going under the venue clause. I'm saying on behalf of my clients that Ms. Morales breached a contract in Florida by failing to file, and I think it is . . . I understand what your argument is. I'm just saying that it would be a stronger argument if it had said . . . if the arbitration provision was with a court in Florida, then clearly it would fall within the provision of the long-arm stretch at this point in time. I see your point, Judge, but I think it's also important what the legislature didn't do after McCrae. They left Seven in there. They didn't change it. They didn't move it at all. Right, but the problem is that Seven existed verbatim for McCrae. True, but McCrae did not have . . . did not present a situation at all where an arbitration was filed, was actually filed in the wrong place in violation of the contract. McCrae does not have that. Yes, if we had brought this case, Judge Lagoa, before Ms. Morales made her filing, I think I'd be in a much worse place. I'd be in a world of hurt for two reasons. One, I'd be asking for, I think, a prospective ruling. I might not even have jurisdiction because I'd be asking for an advisory opinion, but I wouldn't have a breach. From our perspective, this case is more like the case in front of Judge Middlebrooks, the Global Digital, and the Betzall case. That's the one where the Michigan woman gets into an automobile accident and Michigan insurance company, Michigan insurance agreement, and the Michigan insurance company fails to deliver the affidavits, just like the failure to close. These are minuscule parts of an overall contract, and that's enough. We think that that's what seven means. It doesn't have to be a big part. It doesn't have to be a super important part, but it has to be a part. I'll just finish up by simply answering, I think, your question, Judge Marcus, with regard to the standing issue. It's unfortunately an ambiguous situation in front of the court from my perspective, and this is why we addressed it in our brief. Judge Cannon said that she accepts the report, but she only addressed specifically one thing. I think from a belt and suspenders point of view, I addressed the standing issue, and I think for the reasons in our brief, we would prevail on that. I do understand your point that even though she accepted the magistrate's report in whole, I think it is implicit, and I don't want to argue implicit on one side of my argument and not implicit on the other. I think she didn't . . . there's a good point that she didn't address that, and so implicitly she didn't do that, but I'm over my time. Unless you have questions, I don't want to . . . But you would agree then, would you not, that her not having addressed it at all, it's mere fact that the magistrate fully addressed it, whether right or wrong, doesn't place the matter properly before this court at this time in these proceedings? I happen to agree, Judge, but I just wanted to be super careful because I did not want to waive an issue because of the language that Judge Cannon used below, which is, I accept. I did not want to be in a position where I waived an argument. I understand. I was really just trying to be careful, but I accept your point. I'm sorry for going over. If there are no further questions, I wish you all happiness. You were answering our questions. Don't worry about it. Okay. Thank you. Thank you very much. Thank you very much, Mr. Cohn.